IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND
(SOUTHERN DIVISON)

| | |
|---|---|
| Isha Kamara<br>6017 Sellner Lane<br>Clinton, MD 20735<br><br>Plaintiff,<br><br>v.<br><br>UNIVERSITY OF MARYLAND<br>4716 Pontiac Street, Suite 2117<br>College Park, MD 20742<br><br>Defendant, | Case No. 20-3037<br><br>Jury Trial Demanded |

# COMPLAINT
Title IX

## I. NATURE OF ACTION

1. Plaintiff, Isha Kamara brings this case alleging sexual harassment and retaliation, under various statutes.

## II. JURISDICTION AND VENUE

2. This Court has subject-matter jurisdiction over this Complaint pursuant to 42 U.S.C. § 2000d-7 and 28 U.S.C. § 1331 because this action arises under the laws of the United States.

3. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a), because they arise from a set of operative facts also common to federal claims.

4. Venue is proper in the United States District Court for the District of Maryland pursuant to 28 U.S.C. § 1391(b) because all of Defendants' actions and omission giving rise to the claims in this Complaint occurred in the State of Maryland.

## III. PARTIES

5. Plaintiff Isha Kamara ("Kamara") resides in the State of Maryland who studied as an undergrad student under the direction of the University of Maryland at the college park campus during 2015-2020.

6. The University of Maryland College Park ("University) is a college institution within the State of Maryland.

7. The University is a Maryland College Park, is a state government entity, that operates educational programs that are subject to Title IX.

## IV.    EXHAUSTION OF ADMINSTRATIVE REMEDIES AND STATUTE OF LIMITATIONS

8. No particular administrative remedies need to be exhausted prior to filing suit under Title IX and all contentions set forth based on Title IX in this case are undeniably timely filed.

## V.    STATEMENT OF FACTS

9. During all times at issue in this complaint, University was in charge of the academic work environment of Kamara.

10. University policy purports to prohibit sexual harassment.

11. University policy renders all University administrators and faculty as responsible employees who are obligated to report any written or oral complaint to the Title IX Coordinator.

12. On January 25, 2016 Kamara was sexually assaulted on campus housing.

13. Based on the assault Kamara grades dropped to a 1.142 gpa.

14. In October of 2017 Kamara began counseling where she was diagnosed with PTSP and depression due to the sexual assault.

15. Kamara tells the University's counseling center about the sexual assault incident.

16. No one from the University counseling center refers Kamara to Title IX.

17. No one from the University counseling center refers the incident to the Title IX office.

18. In December of 2017 Kamara withdrew from school.

19. In May of 2018, I spoke to University Professor Dorothy Phaire about the sexual assault.

20. The incident was reported to Title IX after speaking to Professor Phaire.

21. A University agent interviews Kamara.

22. Kamara is told the agent would contact her about accommodations. However, no

such contact was made.

23. The University decided not to pursue Kamara's case.

24. In June of 2018, Kamara attempts to transfer to another college in Maryland fail due to low grade point average caused by lack of accomodations.

25. The University continued to allow the student that sexually assaulted Kamara on campus even after he graduated.

26. The University never put accommodations in place to protect Kamara's work environment.

27. Kamara decided to commute from home in August of 2018.

28. Kamara's grades increased during the Fall 2018 school yr.  However, Kamara was dismissed from the University based on her cumulative gpa in December of 2018.

29. In February of 2019 Title IX contacts Kamara about providing accommodations.

30. In October of 2019 Kamara continued to stay away from places that she knew her assaulter would be during school sanctioned events.

31. Kamara observed Social Media threads where other University women students sexual assault complaints were being ignored, belittled and/or covered up by the University, further adding to her feelings of isolation and indignity.

## VI.    STATEMENT OF CLAIMS

### COUNT I
### (UNLAWFUL HOSTILE ENVIRONMENT IN THE FORM OF A CONTINUING VIOLATION, IN VIOLATION OF THE EDUCATION AMENDMENTS OF 1972 ("TITLE IX") AGAINST THE UNIVERSITY.)

32. Kamara incorporates by reference all the above paragraphs hereto.

33. The Civil Rights Act, Titles VII and IX, and the Maryland Fair Employment Practices Act ("MFEPA"), forbid infliction of sex discrimination, through a hostile environment imposed via sexual harassment or imposition of tangible employment actions for rebuffing undesired sexual advances.

34.  The facts described above show the necessary severe or pervasive sexual harassment, hostility on account of sexual assault, and failure to act by the University.

35. Thus, University is both a recipient of federal financial assistance for educational purposes and thus subject to Title IX.

36. University was deliberately indifferent to the sexually hostile environment imposed upon Kamara, which included semesters of anxiety and continued events that would trigger depression and anxiety based on these incidents.

37. The assailant repeatedly was allowed on campus while enrolled as well as while no longer attending the University.

38. Kamara's attempts to directly report the sexual assault failed to stop the harassment over an extended timeframe.

39. Kamara attempted further to stop the harassment by going to professors to report the sexual assault.

40. Defendant did nothing to stop the sexual harassment that continued through at least October 2019.

41. Under the United States Supreme Court's decision in *AMTRAK v. Morgan*, 536 U.S. 101 (2002), "[p]rovided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability."

42. Here, the hostile environment pattern includes acts beginning in January 2016 and continuing through September of 2020, thereby constituting an actionable continuing violation.

43. University subjected Kamara to unwelcome, severe, pervasive and continuing sexual harassment, and failed to prevent or correct that harassment sufficiently.

44. Defendant's actions were taken with reckless disregard of Kamara's rights, and caused Kamara significant harm, both financial and emotional.

## REQUEST FOR RELIEF

**WHEREFORE, the Plaintiff, Ms. Kamara, prays that the Court grant her the following relief:**

(a) Compensatory damages, in an amount to be determined by the jury in accordance with the proof at trial, for the emotional and consequential harms caused by Defendants;

(b) Prejudgment and post judgment interest;

(d) Reasonable attorneys' fees, expenses and costs;

(e) Posting of notices on Defendant's premises notifying employees that Defendants have violated the anti-discrimination laws, and that employees who report

future violations may not be subject to retaliation;

(f) Injunctive relief, including but not limited to: court review of the processes and procedures of the Title IX office to assure that it meets its mandate in the future, including providing all necessary training; such other equitable relief as necessary to effectuate the statutes' purposes; and

(g) Such other relief as the court shall deem just and proper.

## JURY TRIAL DEMAND

The Plaintiff demands that this case be tried by a jury.

Respectfully Submitted,

_____/s/_____
Landon M. White
Fed Bar No. 19477
2225 St. Paul Street
Baltimore, Maryland 21218
O. 410.366.0494
F. 410.558.6772
landon@baltimorelegalservices.com